OPINION OF THE COURT
Shirley Fingerhood, J.
Plaintiffs seek a declaratory judgment that Tax Law § 1150 entitled "Special fee on paging devices” is unconstitutional on its face and as applied. They also request that attorneys’ fees be awarded pursuant to the Civil Rights Attorney’s Fees Awards Act of 1976 (see, 42 USC §§ 1983, 1988).
Plaintiffs are radio common carriers, businesses to which the Federal Communications Commission (FCC) has issued licenses to provide radio paging services in multi-State areas including that of New York, New Jersey and Connecticut. The proliferation of radio paging devices or "beepers,” as they are commonly known, is a relatively recent phenomenon, and some explanation of the operation of the industry follows.
A radio common carrier generates radio signals to the radio paging devices from authorized transmitter sites located throughout the carrier’s multi-State service area. The trans *697 mitters are connected to a terminal facility operated by the common carrier. A customer buys or leases a paging device which is assigned a unique telephone number. When that number is called, the terminal transmits signals to the transmitters which emit radio waves at a frequency to which the beeper has been preset. If the customer is within the service area, the radio waves activate the beeper. Each paging device is tuned to a radio frequency which the Federal Communications Commission has authorized the radio common carrier to use.
Most service providers maintain multiple transmitters in the multi-State area and customers usually purchase a multiState service; in any event due to the nature of radio waves, the signals cannot be stopped at State borders. The territory in which a carrier is licensed is regulated by the FCC and pursuant to the regulations all transmitters in that territory are activated on each call. The radio common carriers cannot ascertain whether or where a customer receives a radio signal and they have no way of identifying the location of the party whose call initiates any particular radio signal.
Radio common carriers derive their revenue from two sources: (1) a uniform monthly "airtime” charge for use of the radio communications network and (2) the sale or rental and maintenance of the beeper. Prices vary from $4 to $40 per month depending on the sophistication of the equipment.
The law which plaintiffs challenge was enacted by the New York State Legislature as section 375 of chapter 55 of the Laws of 1992 in April 1992. It amended the "Sales and Compensating Use Taxes” article of the Tax Law by adding section 1150. Subdivision (b) (1) of that law, which became effective on June 1, 1992, provides: "There is hereby imposed and there shall be paid a fee on each paging device used or authorized for use in conjunction with a paging service, where such service is provided for consideration. The amount of the fee shall be one dollar for each such paging device for each month, or portion thereof, during which such service is used or authorized for use.”
Contending that the fee is in reality a tax, plaintiffs argue that it impermissibly discriminates against interstate commerce, unconstitutionally imposes an exaction upon out-of-State customers who, although authorized to use their beepers in New York, do not do so, and violates the Due Process and Equal Protection Clauses of the Constitutions of the United States and the State of New York.
*698 Plaintiffs argue that section 1150 violates the Due Process Clauses in that it is impermissibly vague and because there is no rational connection between the tax and the out-of-State customers who do not use their beepers in New York; the Equal Protection Clauses are violated because the tax is a flat tax which falls disproportionately on customers who pay the least amount for their monthly service and pay the same amount of tax as those who purchase the high more expensive end service. In addition, plaintiffs contend that the statute impermissibly imposes double taxation.
In opposition to the motion, defendants argue that section 1150 is a fee not a tax. Assuming arguendo that it is a tax, they argue that it should be interpreted to apply only if the taxpayer has contracted for services that enable him to be paged in New York and the device is actually located in the State.
Whether an exaction is a tax or a fee depends on whether its purpose is to raise revenue or to regulate an industry or services. (See, e.g., National Cable Tel. Assn. v United States, 415 US 336 [1974] [Congress in enacting taxes may disregard benefits bestowed on taxpayer but a fee may be exacted by an agency only for bestowing a benefit on an applicant].) A tax is defined as a levy made for the purpose of raising revenue for a general governmental purpose; a fee is enacted principally as an integral part of the regulation of an activity and to cover the cost of regulation. (American Trucking Assns. v O’Neill, 522 F Supp 49 [Conn 1981].)
Section 1150, positioned in the middle of the sales tax article, is in effect a tax. The monthly $1 fee is not related to licensing or other services performed for the beeper holder by the State; it is the Federal Government, not the State, which regulates that aspect of the telecommunications industry. The money collected is added to the general State fisc; the law was passed, not as part of a licensing procedure, but to compensate for a budgetary shortfall.
As a tax section 1150 must comply with the Interstate Commerce Clause, article I, §8, cl (3) of the United States Constitution which authorizes Congress to, "regulate commerce with foreign nations, and among the several States.” The Clause has been interpreted to be, not only an affirmative grant of power to Congress, but also a prohibition against State actions which interfere with interstate commerce. (Quill Corp. v North Dakota, 504 US —, 112 S Ct 1904 [1992]; South Carolina Highway Dept. v Barnwell Bros., 303 US 177 [1938].)
*699 In determining whether a State tax passes muster under the Commerce Clause, the Federal courts apply the four-part test articulated in Complete Auto Tr. v Brady (430 US 274, 279 [1977]) which requires findings that "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.” (See also, Goldberg v Sweet, 488 US 252 [1989].)
The "substantial nexus” component of the test will not be satisfied merely because electronic signals pass through a State; they must originate or terminate in the State from or to equipment or a customer therein. (Compare, United Airlines v Mahin, 410 US 623, 631 [1973] [State has insufficient nexus to tax an airplane’s fuel consumption based on its flight over the State], with Goldberg v Sweet, supra [a State would have a sufficient nexus to tax an interstate telephone call if the call originates or terminates in the State seeking to impose the tax and the charge for the call is either generated by equipment located there or is charged to a customer whose billing address is located there].)
For the large group of out-of-State users who do not use their beepers within New York’s boundaries, the paging signal originates from a transmitter site which need not be in the State; it does not terminate within the State and neither the users’ beepers nor their billing addresses are located in New York. Accordingly, section 1150 does not satisfy the first requirement of the Complete Auto test that the taxed activity of out-of-State users have a substantial nexus with New York State.
The tax also fails the second part of the test because it does not insure that New York taxes only its fair share of an interstate transaction. (Container Corp. v Franchise Tax Bd., 463 US 159 [1983].) In making that determination a court must scrutinize the statute’s internal and external consistently. "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result.” (Goldberg v Sweet, supra, at 261; Container Corp. v Franchise Tax Bd., supra, at 169.) If a tax similar to that imposed by section 1150 were imposed by New Jersey and Connecticut, each beeper user would be required to pay tax to three States.
"The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate *700 activity which reasonably reflects the in-state component of the activity being taxed”. (Goldberg v Sweet, supra, at 262 [upholding a challenged telecommunications tax as externally consistent because it contained a credit provision that prevented multiple taxation].) Section 1150 not only fails to provide for a credit; it expressly proscribes any apportionment or credit. (Subd [c].)
The third prong of the Complete Auto test, which prohibits a tax which discriminates against interstate commerce is violated by section 1150 because the levy places a disproportionate burden on a transaction that crosses State lines. (American Trucking Assns. v Scheiner, 483 US 266 [1987] [Pennsylvania’s flat tax on trucks which used its highways violated the Commerce Clause because a disproportionate burden was imposed on interstate trucks which annually travelled fewer miles on Pennsylvania’s highways than did intrastate trucks].)
Out-of-State users who seldom, if ever, use their pagers in New York, are subjected to the same amount of tax as is paid by intrastate users. "[W]hen the measure of tax bears no relationship to the taxpayers’ presence or activities in a State, a court may properly conclude * * * that the State is imposing an undue burden on interstate commerce.” (Commonwealth Edison Co. v Montana, 453 US 609, 629 [1981].)
The fourth requirement of the test, that a State tax be fairly related to the presence and activities of the taxpayer within the State is not met by the statute. The purpose of the fourth requirement is to prevent burdening persons who do not benefit from services provided by the State with its taxes. In Goldberg v Sweet (supra, at 267-268) the Court held that this "test focuses on the wide range of benefits provided to the taxpayer”, including the receipt of police and fire protection, the use of public roads and the other advantages of a civilized society (D.H. Holmes v McNamara, 486 US 24, 32 [1988]).
It cannot be said that section 1150 is fairly related to any services provided by the State to the class of out-of-State users involved in this case.
Accordingly, because section 1150 fails to satisfy any portion of the Complete Auto test it violates the Interstate Commerce Clause of the United States Constitution (art I, § 8, cl [3]).
Section 1150 also violates the Due Process Clauses of both the United States and New York Constitutions.
In Quill Corp. v North Dakota (504 US —, —, 112 S Ct 1904, 1909-1910 [1992], supra) the Supreme Court observed that due *701 process " 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax’ ” and that the " 'income attributed to the State for tax purposes must be rationally related to "values connected with the taxing State.” ’ ”
As noted supra in discussing the Commerce Clause of the US Constitution, there is no link, definite or otherwise, between New York State and the class of users who reside, work and use their pagers outside of New York. The mere "authorization” to use one’s beeper in this State is an insufficient connection to satisfy due process requirements.
The statute is also impermissibly vague. Section 1150 provides that it shall be administered in accordance with "definitions” and "provisions” applicable to other taxes set forth in the sales tax article only "insofar as such provisions can be made applicable to such fee with the limitations set forth herein and such modifications as may be necessary in order to adapt such provisions to the fee so imposed.” (Tax Law § 1150 [c].) By incorporating some parts of other sections of the Tax Law, "insofar as [they] can be made applicable” and by not defining necessary "modifications,” the statute is so indefinite as to require that one guess at its meaning. It therefore violates due process. (Yu Coug Eng v Trinidad, 271 US 500 [1926].)
The prohibition against double taxation is also violated by section 1150 which imposes a tax in addition to the sales tax on the sale or lease of a beeper (Tax Law § 1105 [b]). Double taxation is prohibited unless specifically authorized by the Legislature. (Sage Realty Corp. v O’Cleireacain, 185 AD2d 188 [1st Dept 1992] [legislative intent to impose double taxation may not be inferred, and every presumption is against it].)
In Tennessee v Whitworth (117 US 129, 137 [1886]) the Court observed: "Justice requires the burdens of government shall as far as practicable be laid equally on all, and, if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect; but if they do, it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition.” The intention to impose double taxation does not appear on the face of the statute. On the contrary, its designation of the payment as a fee indicates that the Legislature did not intend a double tax.
*702 Defendants attempt to read the statute as imposing a tax solely on New York State use of a beeper is of no avail. That construction is inconsistent with the statute, and does not save it from unconstitutionality on due process and preemption grounds.
attorneys’ fees
42 USC § 1983 provides: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.” 42 USC § 1988 grants the prevailing plaintiff in an action brought pursuant to section 1983 the right to attorneys’ fees.
Section 1983 provides a remedy for deprivation of a constitutional right by a State actor. Officials are amenable to suits for declaratory and injunctive relief pursuant to section 1983. (Project Release v Prevost, 463 F Supp 1033 [ED NY 1978].)
In Dennis v Higgins (498 US 439, 445 [1991]) the Supreme Court stated that section 1983 " 'provide[s] a remedy, to be broadly construed, against all forms of official violations of federally protected rights.’ ” The Court specifically held that Commerce Clause violations are properly redressed under section 1983. At least two State courts which have been faced with claims of Commerce Clause violations have relied on Dennis in permitting attorneys’ fees to be awarded pursuant to 42 USC § 1988. (See, American Trucking Assns. v Secretary of State, 595 A2d 1014 [Me 1991]; Neiman Marcus Group v Meehan, 1991 WL 194298 [Conn Super Ct, Sept. 19, 1991, Schaller, J.].)
Honorable James Wetzler, as Commissioner of the New York Department of Taxation and Finance qualifies as a State official who, acting under color of State law, has deprived plaintiffs of their Federally protected rights. Accordingly, the request for attorneys’ fees is granted. The question of attorneys’ fees is severed and set down for a hearing before a Special Referee to hear and report on the question of reasonable fees. The parties are directed to serve a copy of this order with notice of entry on the Legal Support Office for assignment to the Referee’s calendar.