462 S.E.2d 349

WETZEL COUNTY SOLID WASTE AU-
THORITY, A Public Authority of the
State of West Virginia, Robert Phillips,
Jean Phillips, Robert Burgess, Helen
Burgess, Arnold Smith, Nancy Smith,
Orval Sizemore and Flora Sizemore, Pe-
titioners Below,

v.

WEST VIRGINIA DIVISION OF NATU-
RAL RESOURCES and its Director, J.
Edward Hamrick, III; its Division of
Waste and Management and Chief
Thereof, George Max Robertson; and
Lackawanna Transport Company, a
Pennsylvania Corporation, and West
Virginia Division of Environmental
Protection, and its Director, David Cal-
laghan; and Pasquale N. Mascaro, Pres-
ident and Owner of Lackawanna Trans-
port Company, Respondents Below.

No. 22778.

Supreme Court of Appeals of
West Virginia.

Submitted May 10, 1995.

Decided July 14, 1995.

Larry Harless, Charleston, for petitioners below.

Logan Hassig, Timothy E. Haught, Wendy E. Greve, Snyder & Hassig, New Martinsville, William F. Fox, Jr., Harleysville, for Lackawanna Transport and Pasquale N. Mascaro.

Darrell V. McGraw, Jr., Attorney General, David L. Lahr, Assistant Attorney General, Environmental & Energy Division, Charleston, for the West Virginia Division of Environmental Protection; Director, David C. Callaghan; and Chief of the Office of Waste Management, George Max Robertson.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Charleston, for Department of Tax & Revenue, Amicus Curiae.

W. Dean DeLaMater, DeLaMater & Hagg, Weirton, for Brooke County Solid Waste Authority, Amicus Curiae.

McHUGH, Chief Justice:

This case is before the Court upon the certified question of the Circuit Court of Kanawha County. The petitioners in the mandamus action below are the Wetzel County Solid Waste Authority (hereinafter the "Authority"), Robert Phillips, Jean Phillips, Robert Burgess, Helen Burgess, Arnold Smith, Nancy Smith, Orval Sizemore, and Flora Sizemore. Two of the respondents below are Lackawanna Transport Company and Pasquale N. Mascaro (hereinafter "Lackawanna").

I.

The certified question concerns the constitutionality of *W.Va.Code*, 7–5–22 [1990] which was effective on March 10, 1990 and states:

Each county or regional solid waste authority is hereby authorized to impose a similar solid waste assessment fee to that imposed by section five [§ 20–5F–5][1], article five-f, chapter twenty of this code at a rate not to exceed fifty cents per ton or part thereof upon the disposal of solid waste in that county or region. All assessments due shall be applied to the reasonable costs of administration of the county's regional or county solid waste authority including the necessary and reasonable expenses of its members, and any other expenses incurred from refuse cleanup, litter control programs, or any solid waste programs deemed necessary to fulfill its duties.

(footnote added).[2]

On May 31, 1990, pursuant to *W.Va.Code*, 7–5–22 [1990], the Authority passed a resolu-

---

[1]. *W.Va.Code*, 20–5F–5 does not refer to a tax or fee; however, it appears that the legislature is referring to *W.Va.Code*, 20–5F–5a [1988] which imposes a solid waste assessment fee of $1.25 per ton of solid waste disposed of at a solid waste disposal facility and imposes an additional $1.00 per ton of solid waste generated outside the solid waste disposal shed.

As Lackawanna notes, during the 1994 legislative session the legislature enacted Chapter 22 in the *W.Va.Code* which is entitled "Environmental Resources" which consolidated, revoked, renumbered, etc. most environmental articles including the Solid Waste Management Act which was formerly § 20–5F–1, *et seq.* Specifically, *W.Va. Code*, 20–5F–5a was repealed by *Acts of the Legislature of West Virginia*, 2d Reg. Session, 1994, chapter 61, at 349, 828–836, and replaced with *W.Va.Code*, 22–15–11 [1994] which mandates that revenue collected by the tax commissioner from the solid waste assessment fee be dedicated to the Solid Waste Enforcement Fund, the Solid Waste Management Board Reserve Fund, and the Solid Waste Reclamation and Environmental Response Fund.

[2]. *W.Va.Code*, 7–5–22 was first enacted in 1988. *See Acts of the Legislature*, 2d Reg. Session, 1988, chapter 84 at 393. It provided for the collection of a solid waste assessment fee, not to exceed $.50 per ton, on the disposal of solid waste by the authorized county commissions. The proceeds from the collection of the fee were to be used for public capital improvements.

In 1989, the legislature amended *W.Va.Code*, 7–5–22 to state that the proceeds from the collection of the fee were to be applied to the reasonable costs of administration of that county's solid waste authority, including the necessary and reasonable expenses of its members, rather than for public capital improvements. *See Acts of the Legislature*, 1st Reg. Session, 1989, chapter 184 at 1353.

In 1990, the legislature again amended *W.Va. Code*, 7–5–22. *See Acts of the Legislature*, 2d

tion which enacted a solid waste assessment fee of $.50 per ton on each ton of solid waste disposed in Wetzel County. The fee was made effective retroactively to March 10, 1990. On July 5, 1990, the Authority reenacted the May 31, 1990 resolution.

Eventually, the Authority filed a mandamus action on September 17, 1993, in the Circuit Court of Kanawha County to compel the Department of Natural Resources and the Department of Environmental Protection to enforce tonnage caps at the solid waste facility owned and operated by Lackawanna and to enforce the collection of all required fees and taxes on the disposal of solid waste at that facility. Additionally, the Authority sought to include sewage sludge composted at the facility in the monthly tonnage caps and in the calculation of fees and taxes imposed on solid waste disposed at the facility.

The circuit court judge issued a writ of mandamus by order dated February 28, 1994, directing the Department of Environmental Protection to require Lackawanna to pay all statutory and regulatory fees imposed upon the Authority retroactive to April 10, 1993. Thereafter, the circuit court judge retired.

On June 10, 1994, after several motions were filed in the circuit court, the Authority filed a petition for a writ of mandamus with this Court asking this Court to hold certain respondents in contempt for refusing to obey the February 28, 1994 order. By an order dated June 15, 1994, this Court refused the Authority's petition.

Reg. Session, 1990, chapter 169 at 1312–13. The 1990 amendment terminated the authority of the county commissions to impose the solid waste assessment fee and, instead, authorized the regional or county solid waste authorities to impose a solid waste assessment fee. Additionally, the amendment states that the proceeds from the collection of the fee are to be used for the reasonable costs of the administration of the county's solid waste authority, including the necessary and reasonable expenses of its members and any other expenses incurred from refuse clean-up, litter control programs, or any solid waste programs necessary for the authority to perform its duty. The 1990 amendment was effective on March 10, 1990. It is the 1990 version of *W.Va. Code*, 7-5-22 which is at issue in the certified question before us.

According to Lackawanna, on August 11, 1994, the circuit court judge found that the hearing before the previous circuit court judge did not sufficiently develop the facts and was, therefore, not a meaningful hearing. Accordingly, the circuit court judge vacated the February 28, 1994 order.[3]

Subsequently, while developing the record below the circuit court judge determined that it was necessary to certify the following question regarding the constitutionality of the solid waste assessment fee authorized by *W.Va. Code*, 7-5-22 [1990] to this Court:

> Whether West Virginia Code § 7-5-22 violates West Virginia Constitution Article V, § 1, by impermissibly delegating taxing authority to the Regional or County Solid Waste Authorities, violates West Constitution Article X, § 1, requiring taxation to be equal and uniform throughout the State, and violates West Virginia Constitution Article III, § 10, requiring the substantive due process and equal protection of the laws.

The circuit court judge ruled that *W.Va. Code*, 7-5-22 [1990] did not violate the *W.Va. Const.* art. V, § 1; art. X, § 1, or art. III, § 10. This Court accepted the certified question.

## II.

At the outset we note that when reviewing the constitutionality of legislation, this Court must find the negation of legislative power beyond a reasonable doubt before it may declare a statute unconstitutional:

> In 1994, the legislature amended *W.Va. Code*, 7-5-22 by substituting § 20-5F-5, which was repealed, with § 22-15-11. *See* n. 1, *supra*. Clearly, the legislative history of *W.Va. Code*, 7-5-22 indicates that the legislature amended § 7-5-22 in order to comply with the cases regarding regulatory fees rather than the cases which involve taxes. *See* discussion, *infra*.

3. We note that Lackawanna states in its petition upon certified question that an order has not yet been entered which reflects that the February 28, 1994 order has been vacated, although such order has been submitted to counsel and to the circuit court judge. However, the fact that this order has not been entered has no effect on the certified question which is now before us.

' "In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Point 1 Syllabus, *State ex rel. Appalachian Power Company v. Gainer*, 149 W.Va. 740 [, 143 S.E.2d 351 (1965) ].' Syl. pt. 3, *State ex rel. W.Va. Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969).

Syl. pt. 3, *State ex rel. Lambert v. County Comm'n*, 192 W.Va. 448, 452 S.E.2d 906 (1994).

### A.

Lackawanna's contentions that *W.Va.Code*, 7–5–22 [1990] violates *West Virginia Constitution* art. V, § 1, by impermissibly delegating taxing authority to the Authority, and art. X, § 1, which requires taxation to be equal and uniform throughout the State, are premised upon the solid waste assessment fee being classified as a tax rather than a fee. In that we find the solid waste assessment fee to be a regulatory fee and not a tax, there is no need to address Lackawanna's arguments regarding the above constitutional provisions because these provisions concern taxes, not fees.

When determining whether an assessment is a tax or a fee, courts generally analyze the primary purpose of both the assessment and the provision it is said to violate. *See Union Pacific Railroad Co. v. Public Utility Comm'n*, 899 F.2d 854, 858 (9th Cir.1990); *San Juan Cellular Telephone Co. v. Public Service Comm'n*, 967 F.2d 683, 685 (1st Cir.1992). As this Court has held:

"The character of a tax is determined not by its label but by analyzing its operation and effect." Syllabus point 2, *City of Fairmont v. Pitrolo Pontiac-Cadillac*, 172 W.Va. 505, 308 S.E.2d 527 (1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984). Therefore, it is difficult to categorize an assessment as a fee or a tax because the courts have not adopted universal definitions of these terms. *See, e.g., State ex rel. Petroleum Underground Storage Tank Release Compensation Bd. v. Withrow*, 62 Ohio St.3d 111, 579 N.E.2d 705, 710 (1991) ("It is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations where the words 'tax' and 'fee' arise."); 71 Am.Jur.2d *State and Local Taxation* § 15 (1973) ("The distinction between a fee and tax is one that is not always observed with nicety in judicial decisions[.]").

The general consensus is that "[t]he classic 'tax' is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community." *San Juan Cellular Telephone*, 967 F.2d at 685 (citing to *e.g., National Cable Television Ass'n v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974); *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 376 (3d Cir.1978); *Butler v. State of Maine Supreme Judicial Court*, 767 F.Supp. 17, 19 (D.Me.1991)). On the other hand, "[t]he classic 'regulatory fee' is imposed by an agency upon those subject to its regulation." *San Juan Cellular Telephone*, 967 F.2d at 685 (*citing New England Power Co. v. U.S. Nuclear Regulatory Commission*, 683 F.2d 12, 14 (1st Cir.1982)).

The United States Court of Appeals for the First Circuit explained that when the questioned assessment falls in the middle of the spectrum courts tend to "emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation." *San Juan Cellular Telephone*, 967 F.2d at 685. For example, in *San Juan Cellular Telephone* the First Circuit Court of Appeals found that a "periodic

**6**

fee" imposed upon a private company which provides cellular telephone services in San Juan, Puerto Rico was a regulatory fee rather than a tax for three reasons: (1) a regulatory agency assesses the fee; (2) the agency places the money in a special fund; and (3) the revenue from the "periodic fee" is used not for a general purpose, but rather to " 'defray[ ] the expenses generated in specialized investigations and studies, for the hiring of professional and expert services and the acquisition of the equipment needed for the operations provided by law for the Commission.' " *Id.* at 686.

Likewise, the Supreme Court of the United States as early as 1884 recognized the regulatory fee when it found that a statutory levy of $.50 per passenger on shipowners was not a tax since the fee was used to defray the costs of regulating immigration. *Edye v. Robertson*, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (1884) (this case is better known by the title Head Money Cases). *See also State ex rel. Tindal v. Block*, 717 F.2d 874 (4th Cir.1983), *cert. denied, South Carolina v. Block*, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984) (The deduction on proceeds of all milk sold is a regulatory fee rather than a tax because its purpose is to encourage dairy farmers to reduce milk production and to offset the costs of the milk price support program); *Mississippi Power & Light Co. v. United States Nuclear Regulatory Comm'n*, 601 F.2d 223, 225 (5th Cir. 1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1066, 62 L.Ed.2d 787 (1980) (The licensing fee collected by the Nuclear Regulatory Commission is a fee rather than a tax because the revenue from the licensing fee is used "to recover the costs for processing applications, permits and licenses as well as the costs arising from health and safety inspections and statutorily mandated environmental and antitrust reviews."); *Government Suppliers Consolidating Services, Inc. v. Bayh*, 975 F.2d 1267, 1271 n. 2, 3 (7th Cir. 1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993) (The revenue collected from the registration fees of municipal waste collection and transportation vehicles is used to implement the waste disposal regulatory system and is, therefore, a fee and not a tax); *Union Pacific Railroad Co. v.*

*Pub. Util. Comm'n*, 899 F.2d 854 (9th Cir. 1990) (The levy imposed on railroads doing business in Oregon is a regulatory fee rather than a tax because the revenue from the levy is used to defray the costs of regulating railroad operations within the state); *Radio Common Carriers v. State*, 158 Misc.2d 695, 601 N.Y.S.2d 513, 515 (N.Y.Sup.Ct.1993) ("A tax is defined as a levy made for the purpose of raising revenue for a general governmental purpose; a fee is enacted principally as a integral part of the regulation of an activity and to cover the cost of regulation." (citation omitted)); and *River Falls v. St. Bridget's Catholic Church of River Falls*, 182 Wis.2d 436, 513 N.W.2d 673, 675 (Wis.Ct.App.1994), *review denied by* —— Wis.2d ——, 520 N.W.2d 91 (1994) ("[T]he primary purpose of a tax is to obtain revenue for the government, while the primary purpose of a fee is to cover the expense of providing a service or of regulation and supervision of certain activities." (citation omitted)). *Compare Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128 (7th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982) (The registration fee imposed by the Wisconsin Department of Transportation upon trucks is a tax because the revenue derived from the fee is used to pay for highway construction).

■ In the case before us, the revenue from the solid waste assessment fee is to be "applied to the reasonable costs of administration of the county's regional or · county solid waste authority including the necessary and reasonable expenses of its members, and any other expenses incurred from refuse cleanup, litter control programs, or any solid waste programs deemed necessary to fulfill its duties." *W.Va.Code*, 7–5–22 [1990], in relevant part. The county and regional solid waste authorities are public agencies, *W.Va. Code*, 22C–4–3 [1994], whose statutorily imposed duties include the development of a "comprehensive litter and solid waste control plan for its geographic area[.]" *W.Va.Code*, 22C–4–8(a) [1994], in pertinent part. The county and regional solid waste authorities are authorized to "promulgate such rules as may be proper and necessary to implement the purposes and duties of this article [the

article concerns the county and regional solid waste authorities and their duties]." *W.Va. Code,* 22C–4–23(5) [1994].

Clearly, the facts indicate that the solid waste assessment fee imposed by *W.Va.Code,* 7–5–22 [1990] is a regulatory fee rather than a tax: the solid waste assessment fee is used by a public agency to defray its regulatory costs. We recognize, however, that there are arguments to the contrary.

First, Lackawanna contends that the following restrictive definitions of tax and fee are applicable to the case before us:

> Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, *e.g.,* a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

*National Cable Television Ass'n, Inc. v. United States,* 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370, 375 (1974) (footnote omitted) (hereinafter *"National Cable"*). The United States Court of Appeals of the First Circuit noted that the definition of fee in *National Cable* was not meant to overrule or weaken the Head Money Cases, supra, written about regulatory fees by the Supreme Court of the United States in 1884. *San Juan Cellular Telephone,* 967 F.2d at 687.

Indeed, the Ninth Circuit stated that the Supreme Court of the United States was not announcing universal definitions of tax and fee in *National Cable,* but rather was defining the terms in the context of the Independent Offices Appropriation Act of 1952 which was at issue in that case. *Union Pacific Railroad Co.,* 899 F.2d at 861. *See also San Juan Cellular Telephone,* 967 F.2d at 687. In fact, as noted in *Mississippi Power & Light Co., supra,* the Supreme Court of the United States in *National Cable, supra,* found that the Federal Communications Commission was authorized to assess a fee rather than a tax for its regulatory services notwithstanding the fact that a "strong public interest [was] served in providing the service." *Mississippi Power & Light Co.,* 601 F.2d at 228. What the Supreme Court of the United States found objectionable in *National Cable* was the Federal Communications Commission's attempt to recover the entire costs of regulation. *Id.* In the case before us, the cases which discuss regulatory fees are more on point than the definition of fee espoused in *National Cable.*[4]

Lackawanna also argues that the case before us is similar to *City of Fairmont v. Pitrolo Pontiac–Cadillac, supra,* in which this Court found that a fire service charge imposed by a municipality was an ad valorem tax rather than a service fee. This Court came to its conclusion by analyzing the operation and effect of the fire service charge:

> [I]t is apparent that [the fire service charge] closely resembles the general State ad valorem property tax for real and personal property. The City utilizes the assessments made by the county assessor and the State Board of Public Works for the general property tax to determine the value of the property subject to the City's tax. The tax payments are required to be made semiannually and the due dates are the same as the State property tax. The sheriff is empowered to collect the City tax, the same as the State tax. The rate of tax is fifty-five cents for each hundred dollars of value which is based on the traditional ad valorem property tax concept, the value of the property.

*Id.* at 509, 308 S.E.2d at 531. This Court ultimately held that the assessment by the

---

4. We acknowledge that other courts have applied the definitions of tax and fee set forth in *National Cable, supra,* to facts which are similar to the facts in the case before us. *See, e.g., United States v. River Coal Co., Inc.,* 748 F.2d 1103 (6th Cir.1984); *United States v. Maryland,* 471 F.Supp. 1030 (D.Md.1979) and *Executive Aircraft Consulting v. Newton,* 252 Kan. 421, 845 P.2d 57, 62 (1993). However, we find the regulatory fee analysis set forth in *San Juan Cellular Telephone, supra,* to be more persuasive.

municipality was a tax which violated *W.Va. Const.* art. X, § 1 which sets maximum limits allowed for ad valorem taxes.[5]

Therefore, in *City of Fairmont* this Court was concerned with the method the municipality used to collect the fire service charge. In the case before us, the solid waste assessment fee is not collected by valuing personal property. Instead, a fee is charged for each ton of solid waste which is disposed of at the solid waste facility. Therefore, *City of Fairmont* is distinguishable from the case before us.

Accordingly, we hold that the solid waste assessment fee authorized by *W.Va.Code,* 7-5-22 [1990] is a regulatory fee rather than a tax since the revenue from the fee is used for the sole purpose of defraying the costs of the administration of duties imposed upon the county or regional solid waste authorities. Therefore, *W.Va.Code,* 7-5-22 [1990] *does not violate* *W.Va. Const.* art. V, § 1, by impermissibly delegating taxing authority to the county or regional solid waste authorities nor does it violate *W.Va. Const.* art. X, § 1, which requires taxation to be equal and uniform throughout the State.

### B.

■ Lackawanna contends that *W.Va. Code,* 7-5-22 [1990] violates the equal protection and due process concepts found in *W.Va. Const.* art. III, § 10 which states: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." More specifically, Lackawanna acknowledges that the legislative purpose behind *W.Va.Code,* 7-5-22 [1990] is proper; however, Lackawanna contends that the means chosen by the legislature to achieve its purpose are not reasonable because the solid waste facilities and solid waste haulers receive no direct benefit from the solid waste assessment fee. Though Lackawanna's argument is unclear, it appears that they are concluding that in

that they do not directly benefit from the fee imposed pursuant to *W.Va.Code,* 7-5-22 [1990], it violates their due process and equal protection rights to single them out to pay such fee. We find Lackawanna's argument to be misplaced.

■ This Court has held the following in syllabus points 3 and 4 of *Gibson v. West Virginia Dept. of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991):

3. In matters of economic legislation, the legislature must be accorded considerable deference under a due process standard.

4. ' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin,* [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1984).

*See also Randall v. Fairmont City Police Dept.,* 186 W.Va. 336, 412 S.E.2d 737 (1991) (This Court held that the qualified tort immunity provisions of the W.Va. Governmental Tort Claims and Insurance Reform Act of 1986 do not violate the equal protection principle of *W.Va. Const.* art. III, § 10); *Tony P. Sellitti Construction Co. v. Caryl,* 185 W.Va. 584, 408 S.E.2d 336 (1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 135 (1992) (This Court held that tax regulations which excluded "speculative builders" from former consumers' sales and service tax and

---

5. *W.Va. Const.* art. X, § 1 states, in relevant part: [T]he aggregate of taxes assessed in any one year upon personal property ... shall not exceed fifty cents on each one hundred dollars of value thereon and upon all property owned, used and occupied by the owner thereof exclusively for residential purposes and upon farms occupied and cultivated by their owners or bona fide tenants one dollar; and upon all other property situated outside of municipalities, one dollar and fifty cents; and upon all other such property situated within municipalities, two dollars[.]

use tax statutory exemptions available to contractors did not violate principles of equal protection). In a case in which this Court rejected a constitutional challenge of a classification under West Virginia's business and occupation tax this Court held:

> A state by its legislature may make reasonable classifications in enacting statutes provided the classifications are based on some real and substantial relation to the objects sought to be accomplished by the legislation, and a person who assails any such classification has the burden of showing that it is essentially arbitrary and unreasonable.

Syllabus point 5, *United Fuel Gas Co. v. Battle,* 153 W.Va. 222, 167 S.E.2d 890 (1969), *appeal dismissed and cert. denied, United Fuel Gas Co. v. Haden,* 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309.

As acknowledged by Lackawanna, the solid waste assessment fee imposed by *W.Va.Code,* 7–5–22 [1990] is rationally related to the legitimate governmental purpose of defraying the administrative costs of the regional and county solid waste authorities and their solid waste programs. Therefore, our focus will be on whether the means chosen by the legislature to achieve its purpose are reasonable and are not arbitrary or discriminatory.

As we have previously stated, *W.Va.Code,* 7–5–22 [1990] authorizes the county or regional solid waste authorities to impose a solid waste assessment fee not to exceed $.50 per ton of solid waste disposed of in that county or region in order to defray their regulatory costs. Clearly, imposing such fee on each ton of solid waste disposed of in each county or region is not arbitrary or unreasonable. Moreover, the fact that each county or regional solid waste authority may impose a different solid waste assessment fee is not unreasonable or arbitrary in that the statute obviously considers the different needs of each county or region in dealing with solid waste. Once a fee has been imposed by a solid waste authority, that fee is assessed uniformly within that county or region.

We make no judgment as to the wisdom of assessing such fee on each ton of solid waste disposed of in each county or region. After all, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Tony P. Sellitti Construction Co. v. Caryl,* 185 W.Va. 584, 593, 408 S.E.2d 336, 345 (1991) (*citing City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976)). Lackawanna has failed to meet its burden of showing that the imposition of a solid waste assessment fee pursuant to *W.Va. Code,* 7–5–22 [1990] is arbitrary and unreasonable.[6] *See* syl. pt. 5, *United Fuel Gas Co., supra.*

Accordingly, we hold that the equal protection and due process rights found in *W.Va. Const.* art. III, § 10 are not violated by the imposition of the solid waste assessment fee as set forth in *W.Va.Code,* 7–5–22 [1990] because the imposition of the solid waste assessment fee is rationally related to the legitimate governmental purpose of defraying the administrative costs of the regional or county solid waste authorities and their solid waste programs. Furthermore, the imposition of the solid waste assessment fee is neither arbitrary nor discriminatory.

In summary, *W.Va.Code,* 7–5–22 [1990] does not violate *W.Va. Const.* art. V, § 1; art. X, § 1; or art. III, § 10. Thus, the certified question having been answered, this case is dismissed from this Court's docket and remanded to the Circuit Court of Kanawha County for further proceedings.[7]

---

6. *W.Va.Code,* 7–5–22 [1990] provides for the imposition of a solid waste assessment *not to exceed $.50* per ton of garbage disposed of in a county or region. We note that we are not addressing whether the amount of $.50 which the Authority imposed is a reasonable amount because this issue is not before us.

7. The Brooke County Solid Waste Authority, amicus curiae, asserts that Lackawanna has no standing to attack the validity of *W.Va.Code,* 7–5–22 [1990] because Lackawanna merely collects the solid waste assessment fee imposed pursuant to *W.Va.Code,* 7–5–22 [1990]. Inasmuch as this issue was not raised in the certified question nor addressed by any party in the case before us, we decline to address it.

Certified question answered; case remanded.

BROTHERTON and RECHT, JJ., did not participate.

FOX, Judge, and MILLER, Retired Justice, sitting by temporary assignment.