The CITY OF TULLAHOMA, Tennessee, and the City of Shelbyville, Tennessee, et al., Plaintiffs–Appellants,

v.

BEDFORD COUNTY, Tennessee, and Kathy K. Prater, County Clerk, Bedford County, Tennessee, Defendants–Appellees.

Supreme Court of Tennessee, at Nashville.

Jan. 27, 1997.

William G. Colvin, Phillip E. Fleenor, Shumacker & Thompson, P.C., Chattanooga, Stephen M. Worsham, Robertson & Worsham, Gregory & Giffin, Tullahoma, James W. Dempster, Marsha Adcock, McMinnville, Robert F. Hazard, Copeland, Conley & Hazard, Tullahoma, for Plaintiffs–Appellants.

John T. Bobo, Diane M. Segroves Bobo, Hunt & Bobo, Shelbyville, for Defendants–Appellees.

## *ORDER*

In reaction to the Court's decision that Chapter 52 of the Private Acts of 1991 is inconsistent with general laws which mandate a comprehensive plan for the control of solid waste and is, therefore, invalid, Bedford County and the county clerk have filed a petition to rehear, the City of Tullahoma, et al. have filed a motion for clarification regarding the relief to which they are entitled

and the Attorney General and the Commissioner of Environment and Conservation have filed a motion seeking permission to file an *amicus* brief on the petitions, all of which have been granted and are before the Court for consideration.

■ The petition of Bedford County and the clerk insists that the Court erred in finding that the private act is impermissible class legislation. Their reliance for their position is the fact that the private act was enacted prior to the enactment of the Solid Waste Management Act. Priority of enactment is not determinative. Bedford County and the clerk do not deny the validity of the Solid Waste Management Act and the several other statutes which set forth a uniform statewide policy regarding the disposition of solid waste. Therefore, the only issue is whether the private act is inconsistent with the general law within the meaning of Article XI, Section 8 of the Tennessee Constitution. That issue is discussed adequately in the opinion.

The petition filed by the City of Tullahoma, et al. seeks instructions for further proceedings in the trial court on remand. The only issue presented on the motion for summary judgment was the validity of the private act, and that is the only issue decided by the Court. The only relief to which the appellants are entitled at this stage of the proceedings is the declaration that the private act is invalid. The appellants' contention that they are entitled to certain relief, including a refund of all funds collected pursuant to the provisions of the private act, has not been considered by the trial court and is not properly before this Court for review.

The *amicus* brief filed by the Attorney General and the Commissioner does not challenge the decision that chapter 52 of the 1991 Private Acts violates the equal protection provisions of the Tennessee Constitution. It does, however, request clarification of an in-accurate statement made by the author of the opinion. In the discussion of the authority of local governments to impose and collect tipping fees pursuant to Tenn.Code Ann. § 68–211–835, the Court stated: "There is no provision in any statute authorizing local governments to impose additional fees." A correct statement is: "There is no provision in any statute authorizing Bedford County to impose additional fees by the procedure followed in this case." However, proper treatment of the point can best be accomplished by revising the paragraph in which that statement is made, as follows:

The imposition, collection, and use of fees by counties and municipalities incident to the control and disposition of solid waste is authorized and regulated by Tenn.Code Ann. § 68–211–835. Even though the purposes for which the charges imposed pursuant to the private act are not inconsistent with the purposes of the Solid Waste Management Act, those charges may be imposed only as authorized by general law. The statute provides that only local governments and solid waste authorities may impose county fees, and then, only when statutory conditions are met. The charges in this case were authorized by the General Assembly, not by local government, and they do not conform to the statutory conditions.[1]

The original opinion filed in this case will be withdrawn and a revised opinion, a copy of which is attached hereto, will be filed.

Costs are taxed in the revised opinion.

/s/ Lyle Reid
Reid, J.

BIRCH, C.J., and DROWOTA and ANDERSON, JJ., concur.

WHITE, J., not participating.

---

1. The charges are not authorized by subsection (a) because Bedford County does not own the disposal facility; they are not authorized by subsection (e) because the record does not show that Bedford County is a host county to a "regional" solid waste disposal facility; they are not authorized by subsection (f) because the record does not show the proceeds were used for solid waste collection and disposal or that a regional solid waste plan had been approved for Bedford County; nor are the charges authorized by subsection (g) because the record does not show the proceeds were used only for collection and disposal services to which all residents of the county had access. There is no contention that the charges are authorized pursuant to Title 5 of the Code.

## OPINION

REID, Justice.

This is a suit for declaratory judgment, filed by the City of Tullahoma and the City of Shelbyville against Bedford County,[1] in which the Court of Appeals affirmed the summary judgment by the trial court that a private act authorizing the Bedford County Commission to impose a tax on the privilege of disposing of solid waste at landfills in Bedford County does not violate the equal protection provisions of the Tennessee Constitution.[2] This Court, upon finding that the private act is inconsistent with general laws which mandate a comprehensive plan for the control of solid waste in the state, is constrained to declare the private act invalid.

## THE CASE

The private act under review is Chapter 52 of the Private Acts of 1991. It provides, in part:

An Act relative to the levy of a privilege tax on solid waste disposal at landfills in Bedford County; to provide for its collection and distribution; and to provide for penalties for violations of this act.

. . . .

Section 2. The legislative body of Bedford County, by resolution, is authorized to levy a tax for the privilege of disposing of solid waste at a landfill located in Bedford County at a rate not to exceed ten dollars ($10.00) per ton of solid waste.

Section 3. The proceeds received by the county from the tax shall be retained by the county and deposited into the general fund of the county. This tax shall be used by Bedford County to offset expenses realized by the county resulting from a landfill operation within the county, including, but not limited to, road maintenance and repair, the employment of a qualified inspector or inspectors, vehicles, equipment and test services for the purpose of monitoring and inspecting solid waste disposal in Bedford County.

Bedford County does not own or operate a landfill. The only landfill located in the county is owned and operated by an intervening plaintiff, Sanifill, Inc.

The appellants insist that the private act authorizing the county commission to impose a tax on the privilege of disposing of solid waste in landfills in Bedford County is in conflict with the Solid Waste Management Act and other statutes regulating the disposal of solid waste.[3]

The appellees assert that the Court of Appeals properly held that the obligation imposed is a privilege tax authorized by the legislature for the purpose of producing revenue for the county's general fund and, as such, is valid.

---

1. Batesville Casket Co.; City of Winchester; Coffee County; Franklin County; Laidlaw Environmental Services of Chattanooga, Inc.; Sanifill, Inc.; Tennessee Southern Central Iron & Metal; and The City of McMinnville were allowed to intervene as parties-plaintiffs. Sanifill, Inc. was allowed to intervene to interplead the funds it had collected under the challenged act. The City of Shelbyville, an original plaintiff, was dismissed by order of voluntary dismissal. Only Batesville Casket Co., Coffee County, Laidlaw Environmental Services, Inc., The City of McMinnville, Southern Central Iron and Metal, and The City of Tullahoma are before this Court on appeal.

2. Article 1, Section 8 and Article 11, Section 8 of the Tennessee Constitution are the state's expression of equal protection corresponding to Section 1 of the Fourteenth Amendment of the United States Constitution. *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn.1993);

*Sandford v. Pearson*, 190 Tenn. 652, 231 S.W.2d 336, 339 (1950).

**No man to be disturbed but by law.**—That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any matter destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

Tenn. Const. art. I, § 8.

**General laws only to be passed.**—The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land. . . .

Tenn. Const. art. XI, § 8.

. . . No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

3. *See* page 413, *infra.*

## Standard of Review

■ This appeal is from the grant of summary judgment for Bedford County and the county clerk, which was affirmed by the Court of Appeals. Rule 56.03 of the Tennessee Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, the facts are not in dispute, the only issues are questions of law. Consequently, the scope of review is *de novo* with no presumption of correctness. *See* Tenn.R.App.P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

## Analysis

■ While the legislature has wide discretion in declaring those privileges which may be subject to taxation for the purpose of raising revenue, *Knoxtenn Theatres v. Dance,* 186 Tenn. 114, 208 S.W.2d 536, 538 (1948), that discretion does not extend to the imposition of a charge, whether a tax or a fee, which is inconsistent with a mandatory general law unless there is a reasonable basis for the discrimination. In the case of *Brentwood Liquors Corp. of Williamson County v. Fox,* 496 S.W.2d 454 (Tenn.1973), an act authorizing Williamson County to levy a privilege tax on retail liquor dealers was found to be unconstitutional. That Court's conclusion rested on the lack of a reasonable basis for the additional tax burden:

> Chapter 276 of the Private Acts of 1957 recites no reasonable basis, nor can we conceive of any reasonable basis why a particular business in Williamson County should be subject to a different and higher tax than are similar businesses in all the counties of the State.

*Id.* at 457.

The record does not show that Bedford County is unique or distinguishable from other counties in any aspect pertinent to the issues in this case, so there is no reasonable basis for excepting it from applicable general law. Consequently, if the private act offends "obligatory" general law or violates "uniform state policy," it is rendered invalid by the constitution. *City of Alcoa v. Blount County,* 658 S.W.2d 116, 118 (Tenn.Ct.App.1983).

■ The Court of Appeals held that the "local privilege tax is not in conflict with state mandated 'fees,' which are not in the same category as taxes." Whether the charge for depositing waste in a landfill is a tax or a fee, even though denominated a tax, is determined by its purpose. A tax is a revenue raising measure levied for the purpose of paying the government's general debts and liabilities. *Memphis Retail Liquor Dealers' Ass'n v. City of Memphis,* 547 S.W.2d 244, 245–46 (Tenn.1977). *See City of Knoxville v. Lee,* 159 Tenn. 619, 623, 21 S.W.2d 628, 629–30 (1929); 16 Eugene McQuillin, *The Law of Municipal Corporations* § 44.02 (rev.3d ed. 1994). A fee is imposed for the purpose of regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the fee. *Memphis Retail Liquor Dealers' Ass'n v. City of Memphis,* 547 S.W.2d at 246; *Solid Waste Authority v. Division of Natural Resources,* 195 W.Va. 1, 462 S.E.2d 349, 353–54 (1995); *Brewster v. City of Pocatello,* 115 Idaho 502, 768 P.2d 765, 768 (1988); *Crocker v. Finley,* 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346, 1349–50 (1984); *Emerson College v. City of Boston,* 391 Mass. 415, 462 N.E.2d 1098, 1105 (1984).

■ Judged by these definitions, the private act under consideration shows the charge made for depositing waste is a fee. Section 3 of the private act states the purpose of the charge, as follows:

> This tax shall be used by Bedford County to offset expenses realized by the county resulting from a landfill operation within the county, including, but not limited to, road maintenance and repair, the employment of a qualified inspector or inspectors, vehicles, equipment and test services for the purpose of monitoring and inspecting solid waste disposal in Bedford County.

Since use of the proceeds is limited to defraying costs to the county "resulting from" the operation of a landfill, the charge is not a tax levied for the purpose of paying the

county's general debts and obligations, but is a fee imposed to defray the cost of providing a service.

█ The imposition, collection, and use of fees by counties and municipalities incident to the control and disposition of solid waste is authorized and regulated by Tenn.Code Ann. § 68–211–835. Even though the purposes for which the charges imposed pursuant to the private act are not inconsistent with the purposes of the Solid Waste Management Act, those charges may be imposed only as authorized by general law. The statute provides that only local governments and solid waste authorities may impose county fees, and then, only when statutory conditions are met. The charges in this case were authorized by the General Assembly, not by local government, and they do not conform to the statutory conditions.[4]

The issue, then, is whether the charges imposed offend the obligatory general law or violate a uniform state policy. The General Assembly has enacted comprehensive legislation regarding the control of solid waste, including the Tennessee Solid Waste Disposal Act,[5] the Tennessee Solid Waste Planning and Recovery Act,[6] the Solid Waste Management Act of 1991,[7] and the Solid Waste Authority Act of 1991.[8] The general policy provisions of those acts are as follows:

> 68–211–102. Public policy.—(a) In order to protect the public health, safety and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, enhance the beauty and quality of our environment and provide a coordinated statewide solid waste disposal program, it is declared to be the public policy of the state of Tennessee to regulate solid waste disposal to:

> . . .

> (3) Provide a coordinated statewide program of control of solid waste processing and disposal in cooperation with federal, state, and local agencies responsible for the prevention, control, or abatement of air, water, and land pollution. . . .

> . . .

> 68–211–602. Purpose.—(a) The general assembly finds that the public health, safety and welfare require comprehensive planning for the disposal of solid waste on a local, regional and state level. . . .

Several policy principles are set forth in these several acts: the disposal of solid waste will be accomplished at the local, regional, and state level pursuant to comprehensive planning; the development of a comprehensive, integrated statewide program for solid waste management will assure that solid waste facilities whether publicly or privately operated do not adversely affect the health, safety, and well-being of the public; and public spending for the control and disposal of solid waste is to be accomplished by appropriations by the legislature and the imposition of tipping fees by local operators. These statutes regulate all aspects of solid waste management, they control facilities operated by private persons and public agencies, they mandate uniformity, they specifically limit the means of generating revenue, and they require that all revenue received by the state and local governments be used only for solid waste management purposes. The Solid Waste Management Act expressly regulates the imposition, collection, and use of fees and surcharges by the state and local governments; it limits the use of proceeds collected by local governments; and it re-

---

**4.** The charges are not authorized by subsection (a) because Bedford County does not own the disposal facility; they are not authorized by subsection (e) because the record does not show that Bedford County is a host county to a "regional" solid waste disposal facility; they are not authorized by subsection (f) because the record does not show the proceeds were used for solid waste collection and disposal or that a regional solid waste plan had been approved for Bedford County; nor are the charges authorized by subsection (g) because the record does not show the proceeds were used only for collection and disposal services to which all residents of the county had

access. There is no contention that the charges are authorized pursuant to Title 5 of the Code.

**5.** Tenn.Code Ann. §§ 68–211–101 to 68–211–116 (1992 & Supp.1995).

**6.** Tenn.Code Ann. §§ 68–211–601 to 68–211–608 (1992 & Supp.1995).

**7.** Tenn.Code Ann. §§ 68–211–801 to 68–211–874 (1992 & Supp.1995).

**8.** Tenn.Code Ann. §§ 68–211–901 to 68–211–925 (1992 & Supp.1995).

quires that the comprehensive plan for the management of solid waste include a uniform accounting system developed by the state comptroller.[9]

In Martha M. Gentry & William R. Bruce, *A Lawyer's Guide to the New Solid Waste Management Act*, 27 Tenn. B.J. no. 6, at 32, 36 (1991), the authors make the following observations regarding the funding of solid waste management:

The [Solid Waste Management Act] creates a new taxing structure to provide the resources needed to enact this comprehensive approach to solid waste management.

. . .

[T]he most important victory of the new act is it provides funding for the new programs instituted.... [T]he act also provides continuing revenues to administer the new programs authorized.

The article notes that local governments that own and operate solid waste disposal facilities are authorized to impose a tipping fee, but notes that the revenue generated may be used "only for expenses incurred for solid waste management administration in the region." *Id.* at 36.

Review of these statutes require the conclusion that there is obligatory general law and a clearly stated uniform state policy on the subject of the disposition of solid waste applicable to all local governments, including the charges which may be imposed. The imposition of a separate and additional charge for disposing of solid waste in Bedford County is not consistent with this comprehensive scheme for planning, managing, funding, and accounting found in the general law.

The existence of an obligatory general law or uniform state policy has been recognized in comparable situations. In *Sandford v. Pearson*, 190 Tenn. 652, 231 S.W.2d 336 (1950), the Court considered the constitutionality of a private act regulating the transportation, sale, and possession of beer in Haywood County. The Court stated:

In our reported decisions, so numerous have been the assaults on Private Acts under Article I, Section 8, "The Due Process Clause," and Article 11, Section 8, "The Partial Legislation Clause," of the Constitution, that to consider them all would be impossible in a single opinion. As we define the present Act, while it does incidentally affect Haywood County in its governmental function, its primary purpose is to regulate under the police power, the citizens of Haywood County in their private rights to sell, transport and possess beer, when those private rights are already governed, regulated and limited by general statutory law, Code §§ 1191.1–1191.20.

"It is further insisted that the act here involved was designed to affect the county in its political and governmental capacity. While it may so affect the county, as most statutes limited to a particular county do, nevertheless, if it primarily affects the rights of the citizens, without affecting others in like condition elsewhere in the state, it is invalid." *State ex rel. Hamby v. Cummings*, 166 Tenn. 460, 464, 63 S.W.2d 515, 516.

. . .

Giving our obligation of judicial notice its most elastic exercise, we can imagine no

---

**9.**    (b) Revenue from tipping fees at publicly owned solid waste disposal facilities and incinerators received by counties, municipalities and solid waste authorities *shall be expended only for solid waste management purposes.*
   (c) When a municipal solid waste disposal facility is operated as a joint venture by more than one (1) city or county, or combination thereof, or by an authority, the tipping fee authorized under this section shall be imposed by the joint operators or authority, and the tipping fee received shall be remitted to the participating local governments or authorities *for expenditure for solid waste management purposes only.*

Tenn.Code Ann. § 68–211–835.
   (a) Effective July 1, 1992, each county, solid waste authority and municipality shall account for financial activities related to the management of solid waste in either a special revenue fund or an enterprise fund established expressly for that purpose....
   (b) The comptroller of the treasury is directed to develop a uniform financial accounting system conforming to generally accepted accounting principles for use as required by this section.
Tenn.Code Ann. § 68–211–874.

basis on which to distinguish any aspect of the beer problem in Haywood County, from the same problem in other counties of the same or similar size throughout the State. In the Act passed, the Legislature makes no attempt to justify the classification, and that justification was a legislative, not a judicial function. Justice Cook's dissenting opinion, *Darnell v. Shapard*, 156 Tenn. 544, 566, 3 S.W.2d 661.

Under the foregoing authorities for the reasons stated, we are forced to hold that Chapter 756 of the Private Acts of 1949, is *unconstitutional* as violating Article I, Section 8, and Article 11, Section 8, of the State Constitution .... (emphasis added).

*Id.* 231 S.W.2d at 338, 339.

A similar result was reached in *Jones v. Haynes*, 221 Tenn. 50, 424 S.W.2d 197 (1968). In that case, a private act which banned the sale and use of fireworks in Fentress County at all times of the year, was held unconstitutional because it differed from a general law of statewide application which allowed the sale and use of fireworks during certain limited time periods. The Court noted:

Special legislation, as this Act is, that is, it is special legislation affecting Fentress County, affecting different counties or cities in their governmental or political capacities, does not offend Article 11, Section 8, or Article 1, Section 8, of our Constitution even though contrary to a general statute, provided that there is a reasonable basis for the classification.... There is nothing in the act now before us to show that Fentress County is in any different circumstances or condition than any other county in the State of the same size and population. Such a showing is necessary where the general law is to be suspended and when such is not shown the Act is plainly unconstitutional and violative of Article 1, § 8 of our Constitution.

*Id.* 424 S.W.2d at 198–99.

In *State v. Cummings*, 166 Tenn. 460, 63 S.W.2d 515 (1933), the Court considered a private act which prohibited family members of the county court of Hamilton County from contracting with the county for any purpose. The Court stated, "We are unable to perceive any justification for denying to the large number of citizens of Hamilton County affected by this act their constitutional right to contract with citizens similarly situated in the other counties of the state are not deprived of that privilege." *Id.* 63 S.W.2d at 516. The Court stated further:

It is further insisted that the act here involved was designed to affect the county in its political and governmental capacity. While it may so affect the county, as most statutes limited to a particular county do, nevertheless, if it primarily affects the rights of the citizens, without affecting others in like condition elsewhere in the state, it is invalid.

*Id.*

These decisions require that the general law prevail.

### *Conclusion*

The conclusion is that the imposition of an additional charge for depositing solid waste in a landfill in Bedford County is not consistent with uniform state policy and obligatory general law applicable to all the counties in the state. The private act authorizing that charge is, therefore, invalid.

The judgment of the Court of Appeals is reversed, summary judgment is entered on behalf of the plaintiffs, and the case is remanded to the trial court.

Costs are taxed to defendants, Bedford County and Kathy K. Prater, County Clerk.