# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

COUNTY OF BENTON,

        Plaintiff/Appellant,

VS.

H & W ENVIRONMENTAL SERVICES,
and WASTE MANAGEMENT, INC. OF
TENNESSEE,

        Defendants/Appellees.

Benton Chancery No. 8828

Appeal No. 02A01-9802-CH-00040

**FILED**

December 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF BENTON COUNTY
AT CAMDEN, TENNESSEE
THE HONORABLE WALTON WEST, CHANCELLOR

**FRANK M. FLY**
Murfreesboro, Tennessee
Attorney for Appellant

**EDWIN E. WALLIS, JR.**
**MOSS, BENTON & WALLIS, PLLC**
Jackson, Tennessee
Attorney for Appellee H & W Environmental Services, Inc.

**JOHN E. QUINN**
**MANIER & HEROD**
Nashville, Tennessee
Attorney for Appellee Waste Management, Inc.

**AFFIRMED**

                                 **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

        Benton County appeals the trial court's order granting summary judgment to H & W

Environmental Services, Inc. (H&W) and Waste Management, Inc. of Tennessee (Waste Management) and denying summary judgment to Benton County. For the reasons stated hereafter, we affirm the trial court's grant of summary judgment.

## I. Factual and Procedural History

H&W is the owner of the West Camden Sanitary Landfill (the Landfill), which is a Class I municipal solid waste disposal facility located in Benton County, Tennessee that collects municipal solid waste from counties in middle Tennessee and southern Kentucky. Waste Management built and operates the Landfill pursuant to a contract with H&W. The waste that is disposed of at the Landfill either is hauled directly to the Landfill or is transported to Waste Management's transfer station in Nashville, Tennessee.

On December 21, 1992, the Benton County Commission voted unanimously to approve a contract that had been proposed by H&W titled "Host Fee Agreement." The contract was entered into on December 22, 1992 by Benton County through its county executive and by H&W. The Host Fee Agreement essentially is a twenty year contract that commenced in August 1993 granting Benton County (along with the cities of Camden and Big Sandy pursuant to a later amendment) the right to dispose of "county waste material" at the Landfill. Section 2.02 of the contract set the tipping fee to be charged for the disposal of county waste material at no charge for up to 75 tons of waste per day during the first ten years of the contract period and at $12.00 per ton for up to 75 tons of waste per day for years eleven through twenty of the contract period. The tipping fee to be charged for the disposal of all county waste material in excess of 75 tons per day during the entire contract period was set at H&W's "gate rate." Section 2.02 of the contract also established that H&W would pay Benton County one dollar for each ton of out-of-county waste accepted at the Landfill during years eleven through twenty of the contract period. After establishing the tipping fees for county waste material and the one dollar surcharge for out-of-county waste in years eleven through twenty, the contract stated:

2.03 These rates and the $1 per ton host fee to be paid to the

2

County during years 11-20 of the Agreement constitute all host fees and surcharges which shall be levied or assessed by the County or any solid waste district formed or joined by the County against [H&W] or the . . . Landfill as a result of the operations of the . . . Landfill in Benton County except as otherwise set out herein.

2.04 These rates include the present surcharge of $.85 per ton imposed by the State of Tennessee on the disposal of waste in sanitary landfills. In the event this surcharge is increased or any fee, surcharge, duty, tax, or other charges of any nature is imposed by the federal government, any agency thereof, the State of Tennessee, any agency thereof, or by any local governmental agency which is payable solely by reason of the nature of the operations conducted by [H&W] and any other sales or service taxes of general application to the operation of the . . . Landfill, [H&W] shall be entitled to an automatic increase in the County Waste Material Tipping Fee. Such fee, surcharge, duty, tax or other charge shall immediately be passed through to all County Waste Material disposers in the form of a Tipping Fee increase . . . .

. . . .

8.02 This Agreement constitutes the entire agreement and understanding between the parties hereto, and it shall not be considered modified, altered, changed or amended in any respect unless in writing and signed by the parties hereto.

On February 21, 1995, the Benton County Commission enacted Resolution No. 02-21-23 (the Resolution), which provides:

A surcharge shall be imposed on each ton or volume equivalent of municipal solid waste received . . . .
The rate of the surcharge shall be set . . . and then reviewed periodically by the legislative body and adjusted to meet expenditures for which it is imposed.

. . . .

Revenue received from the surcharge may only be expended for solid waste management purposes or for purposes related to off-setting cost impaired. Such revenue shall be segregated from the general fund and shall be used only for purposes for which they were collected.
Such surcharge shall be collected by the operator of the landfill prior to authorizing the disposal of the solid waste at the landfill. Such surcharge shall be collected by such operator from the disposer of the solid waste, and shall be remitted to the county clerk as provided in this resolution.

Thereafter, on April 18, 1995, representatives from both H&W and Waste Management sent letters to the Benton County Executive, notifying him that they viewed the resolution as being unlawful and in violation of the Host Fee Agreement and that they did not intend to comply with the Resolution's requirement that the Landfill collect the specified surcharge.

3

Benton County filed a complaint seeking a declaratory judgment resolving the validity and enforceability of the Resolution. Subsequently, H&W and Waste Management moved for summary judgment, initially asserting that the Resolution violates the Host Fee Agreement, and later asserting that the Resolution does not conform to the statutory language that authorizes the imposition of surcharges. Thereafter, Benton County also moved for summary judgment, initially asserting that Tennessee Code Annotated section 68-211-835(e) authorized Benton County to impose the surcharge set forth in the Resolution and that such a surcharge did not violate the terms of the Host Fee Agreement. (R. at 58-64.) Benton County also later asserted that Tennessee Code Annotated sections 68-211-835(f) and/or (g) authorized Benton County to impose the surcharge set forth in the Resolution. The trial court thereafter found, "the Resolution does not comply with statutory requirements authorizing a surcharge [and] the Resolution is deemed unenforceable." Therefore, it granted H&W's and Waste Management's motion for summary judgment and denied Benton County's motion for summary judgment. Benton County thereafter appealed the trial court's disposition of the summary judgment motions.

On appeal, we are presented with the following specific issues that relate to the propriety of the trial court's disposition of the summary judgment motions:

1. Whether, pursuant to subsection (e), (f), or (g) of Tennessee Code Annotated section 68-211-835, Benton County is authorized to impose the surcharge as set forth in the Resolution.

2. Whether imposition of the surcharge that is set forth in the Resolution would violate the terms of the Host Fee Agreement.

As the trial court's decision rested solely on questions of law, our review is *de novo* with no presumption of correctness for the trial court's findings. City of Tullahoma v. Bedford County, 938 S.W.2d 408, 412 (Tenn. 1997); Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn.1993).

## II.  Whether the Resolution is Authorized by §§ 68-211-835(e), (f), or (g)

4

Tennessee Code Annotated title 68, chapter 211, part 8, which is referred to as the Solid Waste Management Act of 1991, expressly regulates, among other things, the imposition, collection, and use of fees and surcharges by the state and local governments in relation to municipal solid waste. It also limits the use of proceeds collected by local governments. As the first issue presented to us requires us to determine whether the Resolution is authorized by section 68-211-835, we must adhere to principles of statutory construction.

> "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995); State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). "When the words of a statute are plain and unambiguous, the assumption is 'that the legislature intended what it wrote and meant what it said.' The pertinent language must be [applied] 'without any forced or subtle construction extending its import.'" McClain v. Henry I. Siegel Co., 834 S.W.2d 295, 296 (Tenn. 1992).

Worley v. Weigels, Inc., 919 S.W.2d 589, 593 (Tenn. 1996).

We begin our analysis with subsection (e) of section 68-211-835, which provides:

> In order to encourage regional use of solid waste disposal facilities or incinerators, a county that is host to a solid waste disposal facility or incinerator *used by other counties in the same region formed pursuant to this part* may impose a surcharge on municipal solid waste received at any such solid waste disposal facility or incinerator by resolution of its county legislative bodies in the region. The surcharge shall be imposed on each ton or volume equivalent of municipal solid waste so received. The revenue received by a county from the surcharge authorized by this subsection shall be expended for solid waste management purposes, or for purposes related to offsetting costs incurred and other impacts resulting from the county being host to the solid waste disposal facility or incinerator. If any municipality in the host county incurs costs as a result of such a municipal solid waste facility or incinerator, then the county shall appropriate funds derived from the surcharge revenue to the municipality which shall be used by the municipality to offset such costs.

Tenn. Code Ann. § 68-211-835(e) (Supp. 1998) (emphasis added). Based upon the emphasized text quoted above, we find section 68-211-835(e) to be inapplicable to Benton County. The plain and unambiguous language of subsection (e) limits the subsection's scope and application to counties that host a solid waste disposal facility which is used by other counties in the same municipal solid waste region formed pursuant to Tennessee

5

Code Annotated title 68, chapter 211, part 8. Stated otherwise, the subsection applies only to multi-county solid waste regions, and not to single county waste regions, which may also be formed pursuant to section 68-211-813(a)(1). In the case *sub judice*, no counties other than Benton County exist within the same municipal solid waste region. Therefore, the Landfill is not "used by other counties in the same region" and subsection (e) does not authorize the surcharge set forth in the Resolution. See City of Tullahoma v. Bedford County, 938 S.W.2d 408, 413 n.4 (Tenn. 1997).

Having resolved whether subsection (e) provides any authorization for the Resolution, we next turn our attention to subsection (f) of section 68-211-835, which provides, in part:

> In addition to any fee authorized by title 5, and to any tipping fee imposed by any local government under this section, a county, municipality or solid waste authority is authorized to impose . . . [a] surcharge on each ton of municipal waste received at a solid waste disposal facility or incinerator *for expenditure for solid waste collection or disposal purposes* consistent with this part . . . .

Tenn. Code Ann. § 68-211-835(f)(1)(A) (emphasis added). While the surcharge authorized under subsection (f) is restricted to use "for expenditure for solid waste collection or disposal purposes," Benton County's Resolution establishes that the revenue received from its surcharge is to be "expended for solid waste management purposes or for purposes related to off-setting cost impaired [sic]." Initially, we note that it appears that the language set forth in the Resolution was drafted partially to mirror the language of subsection (e), which allows expenditure for "solid waste management purposes, or for purposes related to offsetting costs incurred and other impacts resulting from the county being host to the solid waste disposal facility." However, because subsection (e) does not authorize the Resolution's surcharge, we must determine whether the Resolution's language ("waste management purposes, or for purposes related to off-setting cost impaired") comports with subsection (f)'s express limitation requiring the proceeds to be used "for solid waste collection or disposal purposes."

We find that, while collection and disposal activities are undoubtedly *types* of solid

6

waste management activities, the provision "waste management purposes, or for purposes related to off-setting cost impaired" is broader in scope than "collection or disposal purposes."[1] This conclusion is based, in part, upon the legislature's use of this differing terminology in subsections (e) and (f). "In construing a statute the Court must give effect to every word, phrase, clause, and sentence . . . to achieve the legislature's intent." State v. Odum, 928 S.W.2d 18, 29 (Tenn. 1996). Courts should presume that "the legislature used each word in a statute purposely and the use of these words conveyed some intent and had a meaning and purpose." Tidwell v. Servomation-Willoughby Co., 483 S.W.2d 98, 100 (Tenn. 1972). Courts must further "construe a statute so that no part will be inoperative, superfluous, void, or insignificant . . . and further . . . give effect to every word, phrase, clause and sentence" of a statute. General Care Corp. V. Olsen, 707 S.W.2d 642, 646 (Tenn. 1986). Though we find it unnecessary in this case to judicially define "collection or disposal purposes," as used in subsection (f), we presume that the differing terms used in subsection (e) and the additional language (which is reflected and used in the Resolution), had independent meaning and purpose and was not superfluous or insignificant. We therefore conclude that the Resolution, which reflects subsection (e)'s terminology, does not comport with subsection (f)'s express limitation requiring the proceeds to be used "for solid waste collection or disposal purposes." Accordingly, subsection (f) does not authorize the Resolution, as written. However, assuming the imposition of the Resolution's surcharge does not otherwise violate the Host Fee Agreement, which we address below, we note that the trial court correctly observed that Benton County could simply enact a new resolution where the revenue would be used "for solid waste collection or disposal purposes."

Lastly, we turn our attention to subsection (g) of section 68-211-835, which provides,

---

1. Though the terms "management" and "collection or disposal" are not expressly defined within title 68, chapter 211, part 8, pertinent state regulations define "solid waste disposal" as "the process of placing, confining, compacting or covering solid waste except when such solid waste is for reuse, removal, reclamation, or salvage." Tenn. Comp. R. & Regs. 1200-1-7-.01 (1997).

7

in part:

> In addition to any power authorized by title 5, a county, municipality or solid waste authority is authorized to impose and collect a solid waste disposal fee. Funds generated from such fees may only be used *to establish and maintain solid waste collection and disposal services*, including, but not limited to, convenience centers. . . . . The amount of *the fee shall bear a reasonable relationship to the cost of providing the solid waste disposal services.*

Tenn. Code Ann. § 68-211-835(g) (emphasis added). We find that subsection (g) does not authorize the imposition of a surcharge on services provided by a private entity. Both the fees and the surcharges established by section 68-211-835 are "fees" in the sense that they are imposed for the purpose of either "regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the fee." See City of Tullahoma v. Bedford County, 938 S.W.2d 408, 412 (Tenn. 1997). However, the two terms, as used in section 68-211-835, have differing meanings when read in context with other plain and unambiguous language set forth in the statute. As used in the statute, the term "surcharge" pertains to instances where either the county *or* a private entity is providing the service upon which the fee is based, whereas the term "fee" pertains to charges imposed that are at least partly intended to defray the county's *own* direct costs from providing the service or benefit upon which the fee is based. For example, subsection (a)'s authorization to impose a tipping fee only applies if the county owns the waste disposal facility and is providing the services upon which the fee is based. City of Tullahoma, 938 S.W.2d at 413 n.4. Likewise, subsection (g)'s authorization to impose a solid waste disposal fee only applies for the county "to establish and maintain solid waste collection and disposal services." In fact, subsection (g) further requires, "[t]he amount of the fee shall bear a reasonable relationship to the cost of providing the solid waste disposal services." Therefore, because subsection (g) clearly contemplates a fee based on services provided by a county and not for services provided by a private entity, and because Benton County's Resolution promulgates a "fee" for services provided by H&W and Waste Management, subsection (g) does not authorize the surcharge set forth in the Resolution.

In summary, we find that Tennessee Code Annotated section 69-211-835 does not authorize the surcharge set forth in Benton County's Resolution, as it is written. Therefore,

8

the trial court properly granted H&W's and Waste Management's motion for summary judgment and properly denied Benton County's motion for summary judgment on this basis.

### III.  Whether the Resolution violates the Host Fee Agreement

Our state Constitution establishes "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. I § 20. "Retrospective laws are laws that 'take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed.'" Owens v. Truckstops of America, 915 S.W.2d 420 (Tenn. 1996) (quoting Morris v. Gross, 572 S.W.2d 902, 907 (Tenn.1978)). Furthermore, the Solid Waste Management Act of 1991, upon which Benton County asserts authorizes the Resolution, expressly states, "[a] region or solid waste authority may not impair the obligations of contracts entered into before the date of approval of the region's plan in violation of the Tennessee Constitution, article I, § 20." Tenn. Code Ann. § 68-211-815(b)(4) (1996). In this case, the Host Fee Agreement was entered into before the date of approval of Benton County's waste region plan. Therefore, because H&W's contractual rights under the Host Fee Agreement were already vested, the Resolution is invalid if it violates H&W's rights or Benton County's obligations under the Host Fee agreement.

As set forth earlier, section 2.02 of the Host Fee Agreement established tipping fee rates for the disposal of county waste material and established a one dollar surcharge for each ton of out-of-county waste accepted at the Landfill during years eleven through twenty of the contract period. Section 2.03 thereafter established that the rates and surcharge set forth in section 2.02 "constitute all host fees and surcharges which shall be levied *or* assessed by [Benton] County or any solid waste district formed or joined by [Benton] County against [H&W] or the . . . Landfill as a result of the operations of the . . . Landfill in Benton County except as otherwise set out herein." The Resolution, however, sets forth an additional surcharge for disposing of each ton of municipal solid waste. H&W and

9

Waste Management assert that the Resolution violates section 2.03 of the Host Fee Agreement because it is being levied against H&W. In the trial court, Benton County argued that the surcharge, as set forth in the Resolution, is not levied or assessed against H&W or the Landfill, but is, instead, levied and assessed only against "the disposer of the solid waste" because it is to be collected by Waste Management from the disposer of the solid waste.[2]

While it is true that summary judgment is generally proper when the basic material facts are not in dispute, summary judgment is not proper where different conclusions or inferences could be drawn from those basic facts. Byrd v. Hall, 847 S.W.2d 208, 211, 212 (Tenn. 1993); Blue Diamond Coal Co. V. Holland-America Ins. Co., 671 S.W.2d 829, 834 (Tenn. 1984); Prescott v. Adams, 627 S.W.2d 134, 138-39 (Tenn. App. 1981). If there is any doubt as to the conclusions to be drawn from a material fact, the motion must be denied because all justifiable inferences are to be drawn in the nonmovant's favor. Byrd, 847 S.W.2d at 211, 212. Moreover, while plain and unambiguous terms of a written contract are construed as a matter of law, a trier of fact may be called upon to resolve the intent of the parties with respect to terms that are not plain and unambiguous. Forde v. Fisk Univ., 661 S.W.2d 883, 886 (Tenn. App. 1983).

It would be reasonable to conclude that a surcharge collected by Waste Management from the disposer of solid waste does not violate the Host Fee Agreement by *concluding* that such a surcharge is, at least in form, imposed against the disposer and is not imposed against H&W or the Landfill. However, a reasonable fact-finder could also conclude that such a surcharge is imposed against the disposer *and* H&W because such a surcharge would not simply affect the disposer, but would impose a cost on H&W's business, regardless of whether the surcharge was collected from the disposer of waste separate from the Landfill's tipping fees or was subsequently collected from the Landfill's revenues. If the surcharge was collected from the disposer of waste such that it was

---

2. Benton County further argued that section 2.04 of the Host Fee Agreement authorized the imposition of additional surcharges, though we find no support for this contention based upon the plain and unambiguous language of section 2.04.

10

accounted for separate from the Landfill's tipping fees, the surcharge would initially increase the total cost imposed upon disposers of waste (the consumers of services), which would create an indirect cost to the Landfill by affecting the total quantity of services provided by the Landfill or prices (aside from the surcharge) that the Landfill could charge for disposal of out-of-county waste material or county waste material in excess of 75 tons per day. Therefore, we find that the provision "levied . . . against [H&W] or the . . . Landfill" is not plain and unambiguous and that, absent undisputed proof regarding the intent of the parties as to this provision, the trier of fact must be called upon to determine such intent. Accordingly, summary judgment for either party on this ground would not have been proper. As such, this issue provides further grounds to affirm the trial court's denial of summary judgment to Benton County, though it does not provide a separate ground to support the trial court's grant of summary judgment to H&W and Waste Management.

## IV. Conclusion

Based upon the foregoing, we affirm the trial court's disposition of the parties' summary judgment motions. Costs of this appeal are taxed to Benton County, for which execution may issue if necessary.

_____
HIGHERS, J.

11

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.