IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 4, 2011

## PAUL L. McMILLIN  v. LINCOLN MEMORIAL UNIVERSITY, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-533-08      Dale C. Workman, Judge**

_____

**No. E2010-01190-COA-R3-CV - FILED - MAY 3, 2011**

_____

The plaintiff sued the university and two of its representatives for negligent and fraudulent misrepresentation, negligence, and violation of the Tennessee Consumer Protection Act, alleging that the placement of special credits on his transcript in contradiction to the school's policies and procedures rendered his transcript without value and, consequently, damaged his future applications for employment or graduate school.  The trial court entered summary judgment for the defendants.  The plaintiff appealed.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Paul L. McMillin, Knoxville, Tennessee, appellant pro se.

Howard B. Jackson, Knoxville, Tennessee, for the appellees, Lincoln Memorial University, Valerie Evans, William Hamby, and Southern Association of Colleges and Schools.

**OPINION**

**I.  BACKGROUND**

In August of 2006, pro se plaintiff Paul L. McMillin, a retired Los Angeles police officer, enrolled in a program of study known as the Bachelor of Science Degree in

Management and Leadership Studies[1] ("MLS") at Lincoln Memorial University ("LMU"), which is accredited by the Southern Association of Colleges and Schools ("SACS"). A little over a year after he started the program, Mr. McMillin filed a cause of action in the United States District Court for the Eastern District of Tennessee, alleging that LMU and William Hamby, then Dean of LMU's School of Business, and Valerie Evans, then Director of the MLS program (collectively "the Defendants"), had fraudulently misrepresented the MLS program. In part, the federal court complaint provided the following:

> This complaint arises out of an agreement between a university and perspective students for a degree completion program which will allow the students to complete course work and receive a Bachelor of Science Degree. The offer for the degree is brought through advertisements and personal meetings. After students accept the offer, register for courses, commit thousands of dollars in tuition cost, through written contracts, and attend classes for several months, they learn that their degrees cannot be completed and the information provided to them as an incentive to enter the program is false, grossly misrepresented and done so to enhance the revenue stream of the university's residential college program. During the processes, students become indebted to the providers of their tuition money and further discover that the course taken are not transferable. . . .

In an attempt to settle the federal lawsuit, LMU's counsel sent a letter to Mr. McMillin offering him the opportunity to graduate with a bachelor's degree provided that he satisfied certain conditions. According to Mr. McMillin, he found the letter perplexing because he was not even close to completing the 128 credit hours required for graduation. When he accessed his LMU transcript via the Internet, Mr. McMillin discovered that the university had awarded him 22 semester hours of special credit.[2] Mr. McMillin contends that he had neither applied for special credit nor had he participated in the "Prior Learning Assessment" process supposedly required in order for a LMU student to be given special credit hours. In fact, Mr. McMillin testified that he was not even aware that he had been awarded the special credit until he checked his transcript online. In his deposition, Mr. McMillin stated that he construed this surreptitious addition of credit hours to his transcript as part of LMU's attempt to settle the federal case with him. According to Mr. McMillin, he refused LMU's settlement offer, believing that the special credit hours would harm

---

[1]The MLS program is a specially designed, non-traditional educational plan developed for working adults. The services provided are a packaged block of courses taught over a designated time period for a pre-determined amount of money.

[2]It appears Mr. McMillin was given college credit for instruction received at the police academy.

possible future endeavors to seek employment or to apply to graduate school. However, despite his objections to the special credit, for some time afterward, his LMU transcript continued to reflect the credits and the award of a bachelor's degree. The transcript was eventually corrected and Mr. McMillin never received a diploma.[3] The federal lawsuit was ultimately dismissed on jurisdictional grounds.[4]

In the meantime, in November 2008, Mr. McMillin and a former co-plaintiff, Katherine Rivers (collectively "the Plaintiffs"), filed this state court lawsuit against LMU, Ms. Evans, Dean Hamby, and SACS.[5] Their complaint alleged negligent and fraudulent misrepresentation, negligence, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b)(22) and (27). The state court complaint as amended in part reads as follows:

> During August and September of 2006, Lincoln Memorial University enrolled, registered and accepted tuition from students for a program of study known as the Bachelor of Science Degree in Management and Leadership Studies. Information presented by Lincoln Memorial University and its designated representatives to entice or otherwise encourage students to pay tuition for the program was false, misleading, concealed and wholly misrepresentative of the true facts upon which students relied to make decisions about enrolling, registering and paying the required tuition. The true facts about the program were not discovered until after several months of classes and payment of thousands of dollars of tuition and commitment of personal time. As students progressed through the program it was further learned that the promised education and the award of a Bachelor of Science Degree was a fraudulent business plan to obtain Department of Education backed student loan money, Pell Grant funds and personal money from students.

It was asserted by the Plaintiffs that MLS students were not fully informed regarding the following: certain requirements were demanded by LMU to achieve a degree; certain

---

[3]The affidavit of Helen Bailey, the Registrar, admitted "that Lincoln Memorial's records incorrectly showed that Paul McMillin had received a bachelor of science degree in December of 2007," along with "five other students whose records incorrectly reflected that a degree had been awarded that month." Ms. Bailey indicated that she had "been unable to determine whether the mistaken transcripts resulted from human error or an issue with the computer system."

[4]After the federal court case was dismissed, Mr. McMillin refiled it in state court. It was placed on Judge Workman's docket and assigned Case No. 1-602-09.

[5]The Plaintiffs asserted that SACS did not properly oversee LMU.

prerequisite courses were required prior to enrollment; substantial additional costs, over and above the represented $12,000 in program tuition and supplies, were required; prerequisite courses required for graduation were not offered at offsite campuses and were not offered in the professional studies format; and needed courses would not be offered unless a sufficient number of students were registered to justify LMU hiring an instructor to teach the courses.

As to Mr. McMillin's particular contentions in this lawsuit, his disagreement with LMU concerned his belief that the school and its representatives had not followed university policies and procedures by awarding him the special credit. During the course of this litigation, Dean Hamby outlined the reason for the credits in an affidavit:

> In the Fall of 2007, Lincoln Memorial's Vice-President of Academic Affairs, Dr. Sherilyn Emberton, instructed me to analyze information and documents related to Paul McMillin for the purpose of granting special credits to Mr. McMillin. We were seeking a means to grant special credit to Mr. McMillin in connection with Lincoln Memorial's intended offer to allow him to graduate from the Management and Leadership Studies program, provided that he met certain conditions, as a way to resolve a lawsuit that Mr. McMillin had filed against Lincoln Memorial.
>
> I did as Dr. Emberton asked and recommended granting special credit to Mr. McMillin for various criminal justice courses, based on his background and apparent learning obtained via his work as a police officer, as evidenced by materials he submitted to Lincoln Memorial.
>
> I provided Special Credit Request forms for those courses to Valerie Evans and asked that she execute them and pass them along for processing.
>
> * * *

Subsequently, Ms. Evans signed off on the forms and returned them to Dean Hamby. Ms. Emberton, Registrar Helen Bailey, and Dean Hamby all signed or initialed the Special Credit Approval forms.

Mr. McMillin claims that by placing those hours on his transcript without his knowledge or consent, LMU committed fraud against him, was negligent in enforcing

university policies, and violated the TCPA.[6]  According to Mr. McMillin, the offer to allow him to graduate was fraudulent because the course work documented on the transcript does not meet the educational requirements for the award of the degree.  He alleges that placement of special credits on his record made the offered degree valueless and prevented him from completing the remainder of the course work required for the MLS program, resulting in losses of tuition costs and career earnings.  Mr. McMillin has not registered for any courses through LMU since the Fall of 2007 – he has chosen voluntarily to disassociate himself from LMU because, in his opinion, the activities of the university are fraudulent and further association with the school would make him a co-conspirator.[7]

The trial court granted the motion to dismiss of SACS on March 17, 2009.[8]  Three months later, Ms. Rivers was voluntarily dismissed from the lawsuit.  The motion for summary judgment filed by the remaining Defendants – LMU, Dean Hamby, and Ms. Evans – was granted on April 30, 2010.  The trial court's final order incorporated the court's statements from the bench at the dispositive motion hearing:

> Basically the plaintiff alleges that what happened here as a result of litigation he filed against LMU and an offer to settle which he rejected in regard to that litigation about this diploma program at LMU which he alleges was – could not be completed and would not get a quality diploma the way it operated.  He alleges after there was suggestion about that and he was offered some things contrary to the provisions of the LMU catalogue, LMU gave him certain credits for Life Experience basically, or I guess you could give me credits toward an educational degree for holding motion hearings, I guess.  But anyway, that gave him credits he did not wish and that he finds are offensive because they violate the catalogue and that he says are in essence paper mill type diplomas without substance and without earning those diplomas, and says it's a diploma that not only is of no value but is to the contrary, has a negative effect upon his educational progression and achievements.

---

[6]Mr. McMillin claims that LMU foresaw the possibility that he would be damaged when it warned in the catalog that "SC" special credit was not honored by all other colleges and universities.

[7]At his deposition, Mr. McMillin agreed that he has never been prevented from registering for any course at LMU.  To the contrary, in December 2008, LMU sent him a letter inviting him to take the Management 450 class, one of the core courses that he has not completed.

[8]The trial court determined that the complaint failed to allege any set of circumstances warranting the exercise of personal jurisdiction over SACS and failed to state a claim against SACS upon which relief can be granted.

The problem is the gravamen of the lawsuit are two, basically.

One, violation of consumer protection. The Court agrees with the defendant. There's no sale or offer of sale of goods and services in regard to what happened here. There may have been in regard to the original diploma, that the original lawsuit is about, but in regard to what happened here, there is no offer or transaction that comes within the ambit of the Tennessee Consumer Protection Act.

They did something gracious that he did not want, from the contrary of what is the Consumer Protection Act. So to that extent the Court finds there is no transaction that would come under the ambit of the Consumer Protection Act without getting into whether these two people would constitute people who would fall under the Consumer Protection Act in and of itself without ever getting into whether or not education is a matter that falls within the Consumer Protection Act.

What I'm saying is, if even all those were true, there's no transaction here that creates a Consumer Protection Act case.

Now, back to the baseline question I kept asking, is what harm has been incurred? As I understand it, he says I got a useless diploma. Well, that still leads him back to the original question, was he entitled to a real diploma or was he lured into entering a program which he believed would lead to a real diploma which could not lead to a real diploma.

The fact they issued this one does not change that one way or the other. As I said, it may be evidence about certain defense levels about that first issue, but in and of itself I cannot see how that creates a cause of action in and of itself because he got credits he was not entitled to. He says now they say there's no diploma, but has a transcript that gives him credits he did not ask for.

I don't know how that would create him any harm. There's nothing here that I've heard in this record that was representation that was false other than they gave him credits that he did not apply for.

With that, I think I've covered the two gravamens of this complaint. I don't think this is lawsuit to be tried. The lawsuit to be tried is that federal lawsuit with maybe the facts of this case as some substantial evidence that he's correct in that federal lawsuit circumstantially. It may come in then. But I think this

is not a lawsuit that he can proceed with against LMU. He's limited to his remedies in the LMU lawsuit. . . .

Upon the ruling of the trial court, Mr. McMillin filed a timely notice of appeal.

## II. ISSUES FOR REVIEW

Mr. McMillin raises six issues on appeal, which we restate as follows:

1. Whether the trial court erred in granting summary judgment to the Defendants with respect to Mr. McMillin's claim of fraudulent misrepresentation.

2. Whether the trial court erred in granting summary judgment to the Defendants with respect to Mr. McMillin's negligence claim.

3. Whether the trial court properly substituted summary judgment for a trial.

4. Whether the trial court erred in granting summary judgment to the Defendants without considering Mr. McMillin's concise statement of additional facts pursuant to Rule 56.03 containing evidence of a conspiracy to commit civil fraud.

5. Whether education falls within the ambit of the Tennessee Consumer Protection Act.

6. Whether the trial court violated Mr. McMillin's constitutional right to due process under the Fourteenth Amendment to the United States Constitution.

## III. STANDARD OF REVIEW

Tenn. R. Civ. P. 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

In *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), the Tennessee Supreme Court clarified the moving party's burden of proof in a summary judgment motion. A moving party who seeks to shift the burden of production to the non-moving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the non-moving party's claim; or (2) show that the non-moving party cannot prove an essential element of the claim at trial. *Id.* at 5. According to the Court, when a party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Id.*; *see Byrd*, 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) to show that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

There is no presumption of correctness for summary judgments on appeal. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). This court must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor. *Luther v. Compton*, 5 S.W.3d 635,639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). When the undisputed facts, however, support only one conclusion, then the moving party is entitled to judgment as a matter of law and a summary judgment will be upheld. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

### A.

Mr. McMillin asserts on appeal that the trial court erred in dismissing his fraud claims. Under Tennessee law, in order to prevail on a claim based on fraud, a plaintiff must show the following: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise." *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). In addition, Rule

9.02 requires that allegations of fraud must be pled with particularity. Tenn. R. Civ. P. 9.02. "A claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact." *Kincaid v. Southtrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct. App. 2006).

As to the issues in the instant case, Mr. McMillin's complaint is grossly lacking with respect to the specific material misrepresentations made by LMU, Dean Hamby, or Ms. Evans. Mr. McMillin does not point to particular acts, statements, or omissions by the Defendants upon which he detrimentally relied, but refers generally to being deceived by the university and its named representatives. There is no evidence in the record indicating that any endeavors by Mr. McMillin to obtain employment or to seek admission into another educational program were adversely affected by LMU's placement of special credit hours on his transcript. In fact, the record does not show that Mr. McMillin even made any applications for employment or graduate school during the relevant times in which the special credit hours in question appeared on his LMU transcript. Furthermore, he did not rely on the allegedly concealed special credit hours, because he discovered that these hours had been incorrectly placed on his transcript through his own ordinary diligence. Thus, the trial court properly determined that Mr. McMillin did not establish proof of fraudulent misrepresentation by the Defendants and rejected this claim.

B.

Next, Mr. McMillin assigns error to the trial court's order granting summary judgment to the Defendants with respect to the negligence claim. In response, the Defendants argue that Mr. McMillin's allegation of negligence, in essence, amounts to a claim for educational malpractice, even though the term "educational malpractice" was not used in the complaint.

Generally, educational malpractice is not recognized by courts as a cognizable claim. *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (declaring federal courts unsuited to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions). Courts in other jurisdictions cite significant policy concerns for not recognizing the tort of educational malpractice: "(1) the lack of a satisfactory standard of care by which to evaluate educators, (2) the inherent uncertainties of the cause and nature of damages, and (3) the potential for a flood of litigation against already beleaguered schools." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (S.C. 2003).

We agree with the Defendants' argument in the instant case that Mr. McMillin's allegations of negligence constitute an educational malpractice claim. The essence of the

claim here stems from the actions of LMU and its named representatives in placing special credit hours on Mr. McMillin's transcript in violation of the school's policies and procedures. LMU, according to Mr. McMillin, was negligent in not acting in accordance with its own academic rules. Mr. McMillin contends that the actions of LMU did not provide him with a meaningful education or prepare him for further academic pursuits. This allegation sounds in educational malpractice, which presently is not recognized by Tennessee courts as a cause of action. *See Lord v. Meharry Med. Coll. School of Dentistry*, No. M2004-00264-COA-R3-CV, 2005 WL 1950119, at \*2 (Tenn. Ct. App. M.S., Aug. 12, 2005). Accordingly, we affirm the trial court's decision to grant summary judgment with respect to Mr. McMillin's negligence claim.

## C.

Mr. McMillin also asserts that the trial court erred in substituting summary judgment for a trial, because, in his opinion, this case requires the intense scrutiny and careful review afforded by the trial process. Mr. McMillin implores this court "to take notice of the fraud that is being perpetrated upon students who unsuspectingly walk into LMU's trap of fiscal doom. Student loan accounts are being ravaged and the dreams of middle aged, career minded mothers and fathers are being hijacked." In support of his argument, Mr. McMillin cites only to the Tennessee Supreme Court's admonishment in dicta that "summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues." *Evco Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975).

Rule 56 authorizes courts to use summary judgment to conclude cases, in whole or in part, on the basis of those issues for which there is no genuine dispute of material fact. Tenn. R. Civ. P. 56; see also *Ross*, 528 S.W.2d at 24-25. In the action before us, Mr. McMillin has offered insufficient proof to establish the essential elements of his allegations. Because his arguments are essentially conclusory, the trial court properly utilized summary judgment in this case.

## D.

The next issue Mr. McMillin raises on appeal is whether the trial court erred in granting summary judgment to the Defendants without considering his concise statement of additional facts pursuant to Rule 56.03 containing evidence of a conspiracy to commit civil fraud.

Tenn. R. Civ. P. 56.03 provides in pertinent part:

In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

Tenn. R. Civ. P. 56.03.

In the instant case, Mr. McMillin responded by providing no proof of LMU's conspiracy to commit civil fraud. Accordingly, we find that the trial court's order granting summary judgment to the Defendants was appropriate.

E.

Mr. McMillin presents the broad issue of whether education falls within the ambit of the Tennessee Consumer Protection Act ("TCPA") of 1977, Tenn. Code Ann. § 47-18-101 et. seq. (2001 & Supp. 2010). The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." Tenn. Code Ann. § 47-18-104(a). Mr. McMillin argues that the facts of this case support a colorable claim that falls within the purview of the TCPA.

The Defendants argue in response that the TCPA does not apply to the essential facts of this case, noting the following:

Placement of the credit on Mr. McMillin's transcript did not effect (sic) any trade or commerce, as it did not involve the advertising or offering for sale of anything. It involved only an offer to resolve a pending lawsuit.

There was also no unfair or deceptive act. Lincoln Memorial merely offered to resolve a pending lawsuit by allowing Mr. McMillin to graduate, provided that he met certain requirements. Mr. McMillin understood this, and rejected the offer.

The TCPA provides that its provisions shall be liberally construed to promote the following purposes:

(1) To simplify, clarify, and modernize state law governing the protection of the consuming public and to conform these laws with existing consumer protection policies;

(2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;

(3) To encourage and promote the development of fair consumer practices;

(4) To declare and to provide for civil legal means for maintaining ethical standards of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state; and

(5) To promote statewide consumer education.

Tenn. Code Ann. § 47-18-102.

To achieve these ends, Tenn. Code Ann. § 47-18-104(b) provides in relevant part:

(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part: . . .

(22) Using any advertisement containing an offer to sell goods or services when the offer is not a bona fide effort to sell the advertised goods or services. An offer is not bona fide, even though the true facts are subsequently made known to the buyer, if the first contact or interview is secured by deception; . . .

-12-

(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person; . . . .

Tenn. Code Ann. § 47-18-104(b)(22), (27).

In the instant case, Mr. McMillin's argument for a violation of the TCPA relies specifically on the provisions provided in § 47-18-104(b)(22) and (27). However, Mr. McMillin's vague and conclusory allegations are insufficient to sustain a consumer protection act claim. He fails to plead with the required particularity proof substantiating an intention on the part of LMU and its representatives to deceive him or the public. Additionally, it does not appear that LMU has prevented Mr. McMillin from registering for courses in order to complete his bachelor's degree; rather, he has voluntarily withdrawn from the program of study, forfeiting his tuition investment. Accordingly, we conclude that Mr. McMillin has failed to state a claim under the TCPA. Likewise, as we addressed in *Lord v. Meharry Med. Coll. School of Dentistry*, 2005 WL 1950119, at *2, Mr. McMillin has failed to state a TCPA claim because the Defendants were not engaged in trade or commerce as defined under the Act and no business transaction was involved. The ruling of the trial court on this issue was proper.

F.

In his final issue, Mr. McMillin argues that the trial court violated his constitutional right to due process under the Fourteenth Amendment to the United States Constitution. As stated in the Fourteenth Amendment, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The Tennessee Supreme Court has declared that "[s]ummary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Hannan*, 270 S.W.3d at 5; *see* Tenn. R. Civ. P. 56.04; *Byrd*, 847 S.W.2d at 214. "The summary judgment procedure was implemented to enable the courts to pierce the pleadings to determine whether the case justifies the time and expense of a trial." *Byrd*, 847 S.W.2d at 210.

In this case, LMU filed a motion for summary judgment, and the trial court heard arguments from each party at a hearing. After considering the oral arguments and the evidence presented, the trial court granted LMU's motion and dismissed the lawsuit. In our

view, the hearing afforded Mr. McMillin the opportunity to adequately argue the merits of his case.

Mr. McMillin also contends that he was deprived of due process because the trial court denied his motion to consolidate. This due process argument is equally misguided.

Tenn. R. Civ. P. 42.01 provides as follows: "When actions involving a common question of law or fact are pending before a court, the court may order all the actions consolidated or heard jointly, and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Tenn. R. Civ. P. 42.01. The use of the word "may" indicates that the court has discretion as to whether the facts of a particular case merit consolidation. *Van Zandt v. Dance*, 827 S.W.2d 785, 787 (Tenn. Ct. App. 1991). "'In the absence of statute, the consolidation of actions is not a matter of right, but rests in the sound discretion of the court, and its discretion in ordering or refusing consolidation will not be interfered with unless abused.'" *Id.* (quoting 1 Am. Jur. 2d *Actions*, § 157 (1962)). In determining whether to grant a motion to consolidate, "trial courts must balance the interest of judicial economy against potential for delay, confusion, and prejudice to the parties that may result . . . ." *Id.*

Upon hearing the material facts in the instant case, the trial court exercised its discretion and denied the motion to consolidate. After review of the record, we cannot conclude that the trial court abused its discretion. For the foregoing reasons, we find this issue lacks merit.

## V. CONCLUSION

The judgment of the trial court is affirmed and this case is remanded for the collection of costs below. The costs on appeal are assessed to the appellant, Paul L. McMillin.

_____
JOHN W. McCLARTY, JUDGE